# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6538 | **DATE** | 9/28/2001 |
| **CASE TITLE** | STEPHEN A. GEROW vs. ROHM AND HAAS COMPANY, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/10/01 at 9:30A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Each party's motion for summary judgment [21-1, 34-1 and 38-1] is granted in part and denied in part. Plaintiff's motion to strike [45-1] is denied. Defendants' motion for leave to file brief in excess of 15 pages [26-1] is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 28 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 50 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | 01 SEP 28 PM 2: 37  date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN A. GEROW )
)
        Plaintiff, )
)
vs. ) Case No. 00 C 6538
)
ROHM AND HAAS COMPANY, )
a Delaware Corporation, and MORTON )
INTERNATIONAL, INC., an Indiana )
Corporation, )
)
        Defendants. )

**DOCKETED**
**SEP 2 8 2001**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Stephen Gerow, a former executive with Morton International, sued Morton and its successor company Rohm and Haas Company for breach of his employment contract. This case is before the Court on Rohm's motion for summary judgment and Gerow's cross-motion for summary judgment. Gerow has also moved to strike portions of Rohm's responses to his statement of additional material facts. For the reasons outlined below, the Court grants in part and denies in part each party's motion for summary judgment, and denies the motion to strike.

### FACTUAL BACKGROUND

Between 1990 and July 31, 1999, Gerow was employed by Chicago-based Morton International in various executive-level positions. At the time Gerow signed on with Morton in 1990, he and Morton entered into an executive employment contract (the "Morton Agreement")

that provided Gerow certain benefits and compensation in the event of a change in control of Morton. In January 1999, Morton and Rohm and Haas entered into a merger agreement pursuant to which Morton was to become a wholly-owned subsidiary of Rohm. Following shareholder approval, the merger became effective on June 21, 1999. This transaction constituted a "change in control" that triggered the Morton Agreement between Gerow and Morton.

On June 18, 1999, Morton CEO and Chairman, Jay Stewart, and Morton COO and President, William Johnson, informed Gerow that he would be terminated following the merger. Shortly thereafter, Rohm proposed to Gerow that he enter into a new employment agreement with Rohm that would replace the existing Morton Agreement. Under this alternative employment agreement (the "Rohm Agreement"), Gerow would receive greater compensation and benefits upon termination, but he would also be required to assume obligations beyond those contained in the Morton Agreement. For example, the Rohm Agreement required Gerow to accept a longer non-compete agreement (3 years as opposed to 2 years in the Morton Agreement) and to relinquish his right to sue Rohm for age discrimination.

During late June and early July, Gerow, with the assistance of counsel, reviewed the Rohm Agreement and the benefits it provided, and he also met with a benefits consultant who assisted him in comparing the Rohm and Morton Agreements. On July 14, 1999, Gerow sent Rohm a letter agreeing to the proposed Rohm Agreement, and he signed the Agreement on August 25, 1999. By its terms, the Rohm Agreement was effective on July 31, 1999, and Gerow's employment with Morton was terminated without cause that same date.

The Rohm Agreement, like the Morton Agreement, contains provisions specifically directed to the termination of executives. Section 5(d) of the Rohm Agreement

provides that "[i]f, during the Employment Period,[1] the Company shall terminate the Executive's employment other than for Cause or Disability," Rohm will pay Gerow: (1) all "Accrued Obligations";[2] (2) a lump sum severance payment of $947,250; and (3) a lump sum pension enhancement of $447,774. Section 5(d) also entitles Gerow to:

> [B]enefits . . . at least equal to those which would have been provided to [Gerow] in accordance with the plans, programs, practices and policies described in Section 3(b)(iv) and (vi) of this Agreement if the Executive's employment had not been terminated in accordance with the most favorable plans, practices, programs or policies of the Company and its affiliated companies applicable to other peer executives and their families during the 90-day period immediately preceding [July 31, 1999] or, if more favorable to the Executive, as in effect at any time thereafter with respect to other peer executives of the Company and its affiliated companies and their families.

Rohm Agreement, § 5(d)(iii). Section 3(b)(iv) of the Rohm Agreement provides for the continuation of "welfare benefits" for Gerow and his family (*e.g.*, health, dental, and life insurance benefits) for the entire "Employment Period." Section 3(b)(vi) provides for the payment of $42,500 to Gerow in lieu of fringe benefits (*e.g.*, club memberships, annual physicals).

On August 27, 1999, Rohm paid Gerow his "Accrued Obligations" in the amount of $251,210 and the fringe benefits, lump-sum severance, and pension enhancement payments outlined in Section 5(d). In addition, Rohm subsequently sent Gerow a letter outlining the welfare benefits to which he was entitled through July 30, 2002.

---

[1] The Agreement defines "Employment Period" in part as the "period commencing on the Effective Date [July 31, 1999] and ending on the third anniversary of such date or such later date as mutually agreed to by the Parent, the Company and the Executive prior to such anniversary."

[2] "Accrued Obligations" is a term defined in the Agreement and includes such things as Gerow's base salary though termination and bonuses calculated pursuant to formulas. *See* Rohm Agreement § 5(a).

3

In addition to receiving greater monetary benefits under the Rohm Agreement, Gerow also assumed greater obligations. Section 10 of the Rohm Agreement binds Gerow to a three-year non-compete clause. In consideration for Gerow's non-compete obligations, Section 10(b) requires Rohm to place certain payments ($2,273,400) in a grantor trust for Gerow's benefit. Rohm Agreement, § 10(b). The Agreement further provides that the assets "will be invested by the trustee of such trust in the same investment options as are available under the Rohm and Haas Company Employee Stock Ownership and Savings Plan, or its successors, as the Executive shall from time to time direct." *Id.* After execution of the Rohm Agreement, Rohm contributed $2,273,400 to Gerow's trust account pursuant to Section 10(b).

## ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This case involves various disputes regarding the meaning of Gerow's employment contracts with Rohm and Morton.[3] Issues of contract interpretation are ordinarily questions of law for the Court. *Bourke v. Dun & Bradstreet Corporation*, 159 F.3d 1032, 1036 (7th Cir. 1998). "If a contract is unambiguous, by definition no material issues of fact exist regarding the contract's interpretation; that interpretation is a question of law for the court. But if the contract is ambiguous, the contract's meaning is a question for the trier of fact." *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 377, n.1 (7th Cir. 2000) (quoting *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333

---

[3] The parties do not dispute that Illinois law applies to their contracts.

4

(7th Cir. 1988)). A contract is ambiguous "only if the language used is reasonably or fairly susceptible to having more than one meaning . . . A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." *Id.* (citing *Flora Bank & Trust v. Czyzewski*, 222 Ill.App.3d 382, 583 N.E.2d 720 (1991)). Further, Courts should not examine contract provisions in isolation, but rather should "examine [the contract] as a whole, giving effect, to the extent possible, to all contractual provisions. In so doing, the [contractual] language will be interpreted according to its plan, ordinary and popular meaning." *Id.* (quoting *O'Rourke v. Access Health, Inc.*, 282 Ill.App.3d 394, 404, 668 N.E.2d 214, 220 (1996)).

In the complaint, Gerow claims that Rohm: (1) breached the Rohm Agreement by failing to provide Gerow compensation and benefits in addition to those outlined in Section 5(d) (Count I); (2) breached the Rohm Agreement by failing to provide Gerow all the benefits he was entitled to under Section 5(d) itself (Count I); (3) breached Section 10(d) of the Rohm Agreement by failing to provide Gerow the "same investment options" that were available under the Rohm and Haas Stock Ownership and Savings Plans (Count I); (4) breached the Morton Agreement by failing to pay him accrued bonuses in full (Count III); and (5) breached the Rohm Agreement by miscalculating benefits owed under Section 5(d) (Count V). For the reasons outlined below, we grant summary judgment in Rohm's favor on claims (1) and (2) above. We grant summary judgment in Gerow's favor as to liability on claim (3) but reserve for trial the issue of damages, and grant summary judgment in Gerow's favor on claims (4) and (5) and award interest on late payments made by Rohm.

Counts II and IV of the Complaint address attorneys' fees issues that the parties represent have been resolved. We therefore dismiss these counts without prejudice.

### *Gerow's Entitlement To Additional Benefits Under Rohm Agreement Section 3*

There is no dispute that upon Gerow's termination, the Rohm Agreement entitled him to the benefits outlined in Sections 5(d) and 10(b). Gerow contends, however, that he is *also* entitled to the compensation and benefits outlined in Section 3 of the Rohm Agreement. We disagree.

Section 3 of the Rohm Agreement, aptly captioned "Terms of Employment," sets forth a description of various employment terms and benefits (including annual compensation, bonuses, vacation time, office space, and other benefits) applicable to Gerow during his tenure of employment. *See* Rohm Agreement, §§ 3(a)-(b)(viii). A provision substantially similar to Section 3 was also included in the Morton Agreement. *See* Morton Agreement § 4.

Gerow argues that he is entitled to the Section 3 benefits (in addition to the benefits in the Section 5(d) termination provision) because Section 3 applies during the entire "Employment Period," regardless of termination. The Agreement defines "Employment Period" to include the three-year period from July 31, 1999 through July, 2002. Gerow contends that because Section 3 itself does not explicitly state that, in the event of termination, its benefits do not continue through the entire "Employment Period," he is thus entitled to the reasonable value of all the benefits outlined in Section 3 through July 2002, despite his termination.

Gerow is particularly interested in receiving benefits under Section 3(b)(iii) of the Agreement, which would entitle him to certain retirement benefits commensurate with those received by other "peer executives." Rohm Agreement, § 3(b)(iii). According to Gerow, these "peer executives" include Morton CEO Stewart and President Johnson, and the value of the additional benefits Gerow thinks he deserves exceeds $2 million. The parties contest whether

6

Johnson and Stewart actually constitute "peer executives" vis a vis Gerow. We need not reach this issue, however, because we find that Gerow is not entitled to the benefits outlined in Section 3, except for those specifically referenced in Section 5(d).

Gerow urges us to read Section 3 in isolation and find that he is entitled to the Section 3 benefits for the entire Employment Period because the Section itself does not provide a cessation of those benefits in the event of termination. Gerow's position would be plausible only if we were to completely ignore the existence of Section 5. As previously noted, Section 5(d) provides that "[i]f, *during the Employment Period*" the Company terminates an Executive other than for cause, the Executive is to receive a clearly-defined laundry list of payments and benefits. The event contemplated by Section 5(d) is precisely what happened here. Gerow was undisputedly terminated without cause, and he subsequently received the benefits outlined in Section 5(d). Read as whole, the contract plainly provides for certain defined benefits *in the event an employee is terminated*. The fact that Section 3 itself does not explicitly curtail the "Employment Period" in the event of termination is immaterial when, only a few pages later, the Agreement so clearly provides what happens in the event of a termination.

In short, we believe that Gerow's interpretation of the Rohm Agreement that, post-termination, he is entitled to termination benefits *and* employment benefits is not reasonable, and therefore find as a matter of law that he is not entitled to additional compensation and benefits under Section 3. *See Bourke*, 159 F.3d at 1037 (where one interpretation of a contractual provision is reasonable and the other is not, there is no ambiguity to resolve and the court may interpret the contract as a matter of law).

Gerow alternatively argues that, because Gerow received some benefits outlined

7

in Section 3(b), this entitles him to *all* benefits under Section 3(b). Plaintiff's Response and Cross-Motion, p. 16-17. The reason for Gerow's receipt of some Section 3(b) benefits, however, is clear: Section 5(d)(iii) specifically reserves for a terminated Executive two categories of benefits described in Section 3(b): (1) welfare benefits (Section 3(b)(iv)); and (2) a fringe benefit payment (Section 3(b)(vi)). Gerow received these benefits by operation of Section 5(d), and this does not entitle him to all the benefits outlined in Section 3.

### *Gerow's Entitlement To Retirement Benefits Under Section 5(d)*

Gerow alternatively argues that even if he is not generally entitled to the benefits in Section 3(b), he still should receive pension and other benefits equal to those of Johnson and Stewart pursuant to Section 5(d)(iii). In his brief, Gerow emphasizes language in Section 5(d)(iii) that grants an Executive the "most favorable plans, practices, programs or policies of the Company . . . applicable to other peer executives." Plaintiff's Response and Cross-Motion, p. 21. What Gerow ignores, however, is that Section 5(d)(iii) is not directed to any "plans, practices, programs, or policies," but rather is limited only to the "plans, programs, practices and policies *described in Section 3(b)(iv) and (vi) of this Agreement."* Rohm Agreement, § 5(d)(iii). Sections 3(b) (iv) and 3(b)(vi) describe health benefits and the fringe benefit payment. Therefore, under Section 5(d)(iii), the Executive is entitled to the most favorable plans and practices in effect for his peers with respect only to those particular programs.

### *Rohm's Failure to Provide Investment Options Under Section 10(b)*

Section 10(b) of the Rohm Agreement provides that in consideration for Gerow's covenant not to compete Rohm would place over $2.2 million in a grantor trust and that the assets of the trust would be "invested by the trustee of such trust in the same investment options

8

as are available under the Rohm and Haas Company Employee Stock Ownership and Saving Plan, or its successors, as the Executive shall from time to time direct." Rohm Agreement, § 10(b). Gerow first asserts that Rohm breached Section 10(b) by not serving as the trustee of the funds. However, nothing in Section 10(b) requires Rohm to serve as the trustee, and the Trust Agreement executed by the parties (attached as Exhibit B to the Rohm Agreement) clearly indicates that the trustee will be a bank.

Gerow also argues that Section 10(b) was breached because he was not provided the "same investment options" as those available under the Rohm and Haas Company Employee Stock Ownership and Savings Plan. At the time Gerow signed the Rohm Agreement, the Rohm Plan included a Guaranteed Investment Contract ("GIC") investment option. The GIC offered a rate of return contractually guaranteed by an insurance company, which at the time was approximately 6%. Gerow claims that, when agreeing to Rohm Agreement Section 10(b), he specifically relied upon being able to invest his funds in the GIC.

According to Rohm, the actual Rohm Plan options are not open to ex-employees (which Gerow disputes). What is undisputed, however, is that Gerow was offered a series of alternative investment options through Wachovia Bank, none of which was a GIC option. Gerow ultimately chose to invest his funds in a U.S. Treasury money market account, which yielded an approximately 4% rate of interest. Gerow now seeks damages equal to the 6% rate of return he would have obtained under the GIC option, less the 4% rate of return his investments actually experienced.

A plain reading of Section 10(b) dictates that Gerow was entitled to receive the "same investment options" as those made available under the Rohm Plans. Because it is

9

undisputed that Gerow was not provided the same investment options as were offered under the Rohm plans (in particular the GIC option), we grant summary judgment in Gerow's favor on this issue. With respect to Gerow's damages claim, Rohm argues that Gerow should have mitigated his damages by selecting some other fixed income investment option with a higher rate of return. There is a genuine factual dispute regarding the amount of Gerow's damages, and we reserve the award of damages on this claim for trial.

***Breach of the Morton Agreement***

In Count III of the complaint, Gerow argues that the defendants breached the Morton Agreement, which was in effect from June 21, 1999 until the effective date of the Rohm Agreement, by failing to pay an accrued long-term bonus in the amount of $50,800. This amount has since been paid. As discussed below, Gerow is entitled to interest on this amount.

Although it is not entirely clear in his briefs, Gerow also seems to suggest that he is somehow entitled to all the retirement programs of his peer executives under the Morton Agreement, even after execution of the Rohm Agreement. *See, e.g.*, Plaintiff's Reply in Support of Cross-Motion, p. 10. However, there can be no dispute that the Rohm Agreement superseded the Morton Agreement as the operative employment contract, a fact that Gerow recognizes in the first paragraph of his complaint: "Following Morton's takeover by Rohm, Mr. Gerow was offered a replacement employment contract with a term of three years, which he accepted." Complaint, ¶ 1. Accordingly, we decline to enforce the Morton Agreement after the effective date of the Rohm Agreement.

***Claims For Attorneys' Fees***

Counts II and IV of the Second Amended Complaint seek payment of Gerow's

attorneys' fees by Rohm. Rohm has apparently agreed to pay Gerow's attorneys' fees and, as Gerow agrees, the attorneys' fees issue is now moot. Counts II and IV therefore are dismissed without prejudice.

*Claims For Interest*

Gerow has two claims for interest. The first is on a $50,800 payment made by Rohm approximately two years after Gerow's termination. The untimeliness of Rohm's payment of the $50,800 appears to be undisputed, and Gerow is therefore entitled to the interest he seeks, at the Illinois statutory rate of 5% per annum. *See* 815 ILCS 205/2. Gerow also claims that Rohm erred in calculating the lump sum pension enhancement set forth in Section 5(d)(ii)(B) of the Rohm Agreement. Plaintiff's Response and Cross-Motion, p. 26. Rohm has since recognized its error and has submitted the $3,000 deficiency to Gerow, without interest. Gerow is also entitled to interest on this payment at the statutory amount. We will leave it to the parties to calculate these figures and submit an appropriate order.

*Gerow's Motion To Strike*

Gerow also filed a motion to strike portions of the Defendants' response to Gerow's statement of additional material facts. The Court did not rely upon the disputed portions of Rohm's responses in reaching its decision, and Gerow's motion to strike is therefore denied as moot.

## CONCLUSION

For the reasons stated above, each party's motion for summary judgment [docket items 21-1, 34-1, and 38-1] is granted in part and denied in part. Plaintiff's motion to strike [item 45-1] is denied. Defendants' motion for leave to file brief in excess of 15 pages [item 26-1] is terminated as moot.

Dated: September 28, 2001

*/s/ Matthew F. Kennelly*
MATTHEW F. KENNELLY
United States District Judge